UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | Case No. 3:19-CR-59 (CAR) |
| v. : | Filed at _1:50_ PM |
| DAVID ZAVALA aka "TORO" : | _12/11_, 20_20_ |
| Defendant. : | DEPUTY CLERK, U.S. DISTRICT COURT MIDDLE DISTRICT OF GEORGIA |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and DAVID ZAVALA aka "TORO", hereinafter referred to as "Defendant," and Defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Indictment against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant his understanding of the Government's evidence.

(2)

The Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by jury. The Defendant understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the Government would have the burden of proving Defendant's guilt beyond a reasonable doubt. The Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. The Defendant understands that Defendant would be entitled to confront and to cross-examine the Government's proof, and to present witnesses and evidence in Defendant's own behalf. The Defendant understands that Defendant would have the right to testify in Defendant's



1

own behalf, but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant is satisfied with the services of Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. Therefore, the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A)   The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One (1) of the Indictment which charges Defendant Conspiracy to Possess with intent to distribute a mixture containing a detectable amount of methamphetamine in excess of five hundred (500) grams and marijuana in violation of Title 21 U.S.C 846 i/c/w 81(a)(1), (b)(1)(A)(viii) and 841(b)(1)(D).

(B) That Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to a minimum mandatory sentence of ten (10) years to a maximum term of life imprisonment, a maximum fine of $10,000,000.00, or both, and a term of supervised release of at least five (5) years. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 per count.

(C) The Defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that Defendant may have received from Defendant's attorney, the Government, or the Probation Office. The Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the Government, Defendant's attorney, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Investigation Report and found by the Court to be the correct advisory guideline range.

(D) The Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a Presentence Investigation Report has been completed. The Defendant understands and has discussed with Defendant's attorney that the Defendant will have the opportunity to review the Presentence Investigation Report and challenge any facts reported therein. The Defendant understands and has discussed with Defendant's attorney that any objections or challenges by the Defendant or Defendant's attorney to the Presentence Investigation Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E)     Defendant understands and has discussed with Defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F)     Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)     **Waiver of Appeal Rights and Right of Collateral Attack**:  Understanding that Title 18, United States Code, Section 3742 provides for appeal by a Defendant of the sentence under certain circumstances, Defendant waives any right to appeal the imposition of sentence upon Defendant, including the right to appeal the amount of restitution imposed, if any, except in the event that the District Court imposes a sentence that exceeds the advisory guideline range as that range has been calculated by the District Court at the time of sentencing, or in the event that the District Court imposes a sentence in excess of the statutory maximum.

(H)     Defendant waives any right to collaterally attack Defendant's conviction and sentence under Title 28, United States Code, Section 2255, or to bring any other collateral attack, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. This provision shall not bar the filing of a petition for writ of habeas corpus, as permitted by Title 28, United States Code, Section 2241.

(I)     Defendant waives any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c)(2), except in the event of a future retroactive amendment to the sentencing guidelines which would affect Defendant's sentence.

(J)     Defendant and the Government agree that nothing in this plea agreement shall affect the Government's right or obligation to appeal as set forth in 18 U.S.C. § 3742(b).  If,

however, the Government appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

(K)     Defendant acknowledges that this waiver may result in the dismissal of any appeal or collateral attack Defendant might file challenging his/her conviction or sentence in this case. If Defendant files a notice of appeal or collateral attack, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the Government, be remanded to the District Court to determine whether Defendant is in breach of this agreement and, if so, to permit the Government to withdraw from the plea agreement.

(L)     The Defendant understands that the Government may have various items of biological evidence in its possession in connection with this case that could be subjected to DNA testing. Biological evidence for this purpose is defined as any sexual assault forensic examination kit and any other evidence that, in the course of the investigation and prosecution of this matter, has been detected and has been identified as semen, blood, saliva, hair, skin tissue, or some other type of biological material.

The Defendant further understands that following conviction in this case, he could file a motion with the Court to require DNA testing of any such biological evidence pursuant to 18 U.S.C. § 3600 in an attempt to prove Defendant's innocence. The Defendant fully understands this right to have any and all of the biological evidence in this case tested for DNA, has discussed this right with Defendant's attorney, and knowingly and voluntarily waives the right to have such DNA testing performed on the biological evidence in this case. Defendant fully understands that because Defendant is waiving this right, the biological evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

(4)



In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A) That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this district against the Defendant. Further if at the time of sentencing there are any remaining counts, they will be dismissed.

(B) If the Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the Defendant receive a downward adjustment in the advisory guideline range. However, the decision whether the Defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly,

threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Presentence Investigation Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the Defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

Defendant agrees and stipulates that the Government can prove beyond a reasonable doubt the facts alleged in the Indictment.

DAVID ZAVALA aka "TORO", herein after Zavala has been in the Georgia Department of Corrections (DOC) in the Middle District of Georgia and elsewhere for several years. While in custody, Zavala has conducted methamphetamine transactions using over thirty- (30) contraband cell phones and/or using social media platforms. DOC and BOP officers have to date seized thirty-five (35) contraband cell phones from Zavala.

In 2016, law enforcement officers (LEO) began investigating Zavala's drug trafficking organization and obtained valid search warrant and a wiretap for Zavala's Facebook account. LEO discovered messages between Zavala and his associates where he was directing and coordinating deliveries of methamphetamine to multiple individuals and instructing others on how to make payments to him and others involved in the drug organization.

On May 5, 2016, Karen Myers was arrested at Jonathan Powell's home in Athens, Georgia in possession of 430 grams of methamphetamine. Myers' boyfriend and coconspirator, Jonathan Powell remained hidden in the attic and was not apprehended on that date. Powell and Myers were indicted by the Government and later pled guilty 2017. Both Myers and Powell cooperated with the Government. In his debriefing, Powell explained Chris Harris introduced him to "Toro" for the purpose of obtaining methamphetamine. Powell communicated with "Toro" via contraband cell phones because "Toro" was in prison. Powell stated he purchased meth from "Toro" in amounts varying from 18 to 32 ounces at a time. "Toro" instructed Powell to deposit cash on bank accounts, usually Wells Fargo and then would give Powell or Harris the address to meet his runners. The meeting locations varied as did the runners, who would sell Powell or Harris the methamphetamine.

From January 14 to January 18, 2016, Andrew Young and Zavala exchanged a number of text messages about Andrew Young driving from Georgia to Texas to pick up meth and return to Georgia. During the trip, Andrew Young sent updating texts noting his location and once he was close to McAllen, Texas, Zavala provided the address of the home Andrew Young would pick up ~~the meth~~ *marijuana*. Andrew Young sent Zavala a text asking to get "two on credit" since he had gone to Texas for a few days and needed his customers straight. Zavala replied to wait until he returned to Georgia and he would give him "1/4 pound see through (crystal meth) and 2 bags of trees (marijuana) every trip. On January 18, 2016, Andrew Young sent texts to Zavala as he was driving back to Georgia, Zavala directed Andrew Young to drive to Dalton, Georgia and later to a Walmart to pick up money. Zavala instructed Andrew Young to send money to other individuals and said to send it via Money gram. On May 30, 2016, Andrew Young was arrested in Oglethorpe County, Georgia in possession of a stolen rental car from



McAllen, Texas. He failed to return the car after the rental period expired. Andrew Young was in possession of 74.46 grams of methamphetamine. After his arrest, Andrew Young's sister sent several messages via Facebook saying her brother Andrew Young was trying to get in touch with him. Zavala did not respond.

From March to September 2017, Zavala communicated with co-defendant Ricky Young coordinating sales of ounces to more than one kilogram of methamphetamine. Zavala directed associates like Ricky Young to call the "office" or "Gambino Office" phone number. On September 16, 2017, Ricky Young sent a Facebook message asking Zavala "to call this guy because he wanted to get a "whole" (kilogram), Zavala responded "Gambino Office 9092566117", "download whats app". Ricky Young replied "we got 4100 I'm trying to get as much as I can because I'm tired of coming everyday". Zavala replied "whats app". Ricky Young explained he does not know how to use Whats app, can't figure out how to listen to the voice message Zavala just sent him and finally he has "41 and wants to get the whole thing". On September 21, 2017, Ricky Young sent Zavala a text with a new phone number, as his "whats app" and he would be ready by 5:00. Ricky Young was arrested on September 23, 2017 in possession of 109 grams of meth.

On October 2017, coconspirator and DOC inmate Bruce Hicks contacted Zavala, Mathew Shaver ("Sandy") and Peggy Bentley to let them know he (Hicks) was going in the "Hole" (solitary confinement) because "look bro they got my phn". Hicks told Zavala, he could trust them. Hicks provided Zavala Bentley's and Shaver's phone numbers. In November 2017, Mathew Shaver, Mechelle Morris and Steve Turbeville and were arrested in possession of seventeen hundred grams of methamphetamine and while Hicks was still in solitary confinement. On May 24, 2018, Bentley was arrested in Oconee County with several ounces



of methamphetamine and her phone was seized. Zavala's cell phone #11 ending on 0794 was found in Bentley's contacts. Bentley pled guilty and cooperated with law enforcement. Bentley confirmed Hicks had Zavala worked together in 2017 when Hicks was sent to the "Hole" and stated Zavala had a thirty (30) kilograms shipment of methamphetamine coming to Georgia. Zavala wanted her to stash the meth until it could go to Vargas.

On June 25, 2018, Jose Arguelles was arrested in Franklin County on his way to deliver an ounce of meth to a confidential informant. Arguelles agreed to make a call to his supplier, Russ and order half a kilogram of methamphetamine. The next day, Russell Huckaba was arrested in possession of 480 grams of meth with an 80% purity as he drove into the restaurant where Arguelles was supposed to meet him. LEO seized Huckaba's cell phone. During the search of Huckaba's cell phone, LEO found a text message from Rick Young asking to talk to "Toro". Huckaba directed him to "hit Toro" on Whats app. LEO discovered text messages between Huckaba and Zavala discussing money owed by Chief for meth fronted. Chief is Arguelles' alias.

The suspected drugs purchased and seized during the investigation were sent to the crime laboratory and tested positive for methamphetamine.

The Government and the Defendant stipulate that the amount of ~~crack cocaine~~ methamphetamine attributable to the Defendant under Relevant Conduct is more than fifteen (15) kilograms but less than thirty kilograms (30) of methamphetamine. The Government and the Defendant stipulate that an enhancement under U.S.S.G.§ 2D 1.1 is not warranted and a four (4) level enhancement under U.S.S.G § 3B1.1 for aggravated role in the offense is warranted.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this 11 day of December, 2020.

CHARLES E. PEELER
UNITED STATES ATTORNEY

BY: _____
TAMARA A. JARRETT
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 389629

I, **DAVID ZAVALA, aka "TORO"**, have read this agreement and had this agreement read to me by my attorney, WILLIAM MORRISON. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

_____
**DAVID ZAVALA aka "TORO"**
**DEFENDANT**

I, WILLIAM MORRISON, attorney for Defendant, **DAVID ZAVALA, AKA "TORO"**, have explained the Indictment and the Government's evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against

Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

WILLIAM MORRISON
**ATTORNEY FOR DEFENDANT**